Ruth R. MAXWELL et al., Appellants,

v.

COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellee.

Court of Appeals of Kentucky.

Feb. 18, 1966.

As Modified on Denial of Rehearing
July 1, 1966.

Don S. Sturgill, Gardner L. Turner, Sturgill, Moreland & Turner, Lexington, for appellants.

Robert Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, Henry Smith, Deddo G. Lynn, Lexington, for appellee.

CLAY, Commissioner.

In this highway condemnation case the landowners appeal from a $40,000 judgment for the taking of 10½ acres of their farm (including certain improvements). Many alleged errors are complained of.

The principal property taken was a strip which ran the length of the western boundary of the farm and a smaller strip from the frontage for the widening of the Winchester Road. On the farm is a magnificent residence but it was not immediately affected by the taking.

The commissioners appointed by the county court awarded the landowners $38,000, and they appealed to the circuit court. The Commonwealth took no appeal. The circuit court jury awarded $40,000. The first contention of the landowners is that the Commonwealth should have been *denied the right to introduce any evidence* at the de novo trial in the circuit court. This proposition is based on the theory that the Commonwealth's failure to file some responsive pleading to the landowners' statement of appeal (filed in the circuit court) constituted an admission that the damages awarded in the county court were inadequate, and consequently the Commonwealth could not introduce evidence on the issue. There are several answers to such contention.

Assuming the statement of appeal and exceptions filed by the landowners in a condemnation case constitute pleadings for certain purposes, KRS 177.087(1) makes no provision for counterpleadings. CR 8.04 specifically provides in part:

> "Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided."

Even if a responsive pleading would be permissible as indicated in Commonwealth, Department of Highways v. C. S. Brent Seed Company, Ky., 376 S.W.2d 310, CR 8.04 provides that, even if a responsive pleading is *required*, the failure to deny does not relieve a party of proving his allegations "concerning value or amount of damage". We know of no rule or principle (other than an admission) which would deprive a party of introducing proof on a triable issue of unliquidated damages.

Two other observations may be made. A condemnation case is a special type of proceeding and (assuming the right to condemn is not questioned) the basic issue, automatically and continuously through any proper appeals, is what constitutes just compensation. Since the deter-

mination of that basic issue is the reason for a de novo trial in the circuit court, neither party should be deprived of the right to introduce proof on it (even though by some procedural step in the proceedings or by admission a party may have estopped himself from contesting the upper or lower limit of the award. See Commonwealth, Department of Highways v. C. S. Brent Seed Company, Ky., 376 S.W.2d 310).

■ Also, considering the particular case before us, where the basis of the landowners' appeal was that the county court award was inadequate, even if we could say (which we do not) that the Commonwealth had admitted by failure to file a response to the statement of appeal that the damages were inadequate, such admission does not establish to what extent they were inadequate. Consequently the Commonwealth could introduce proof to show they were not as inadequate as claimed by the landowners. (The circuit court award was $2,000 higher than the county court award.) We find no merit in this first allegation of error.

■ The next contention is that the damage award did not properly include the value of certain fencing which was taken by the Commonwealth. As a result of the taking the Commonwealth removed a substantial length of six-foot chain-link fence. At the time of the trial this fence had been relocated and the Commonwealth's witnesses did not in their testimony make any allowance for its value. It is apparently the landowners' contention that some separate award must have been made for it, which of course would violate the proper measure of damages in such a case, i. e., the difference in market value of the land (with improvements) before and after the taking. Commonwealth, Department of Highways v. Sherrod, Ky., 367 S.W.2d 844.

The landowners argue that the new fence, which was erected at the Commonwealth's expense, is not as good as the old one. This of course would have a bearing upon the market value of the land after the taking and it would be relevant on that issue. However, there was a dispute between the Commonwealth and the landowners' witnesses as to whether the new fence appreciably lessened the after value of the land. This was a matter for the jury to determine. Whether or not the fence was actually "taken", the ultimate issue was the difference in the before and after market values of the property, whatever the Commonwealth took.

■ It is next contended the landowners were surprised when the Commonwealth's witnesses did not make a separate evaluation of this fence. In the first place, there appears to have been no surprise, and if there had been, the landowners did not ask for a continuance. We are examining this record to find errors, if any, committed by the trial court, and the landowners can point to none in this connection.

■ The next contention is that one of the Commonwealth's witnesses used an improper factor in fixing the after value of the property. This witness testified that he had considered the loss of access to a part of the highway in determining such after value. Assuming it was an improper factor, obviously its consideration by a witness for the Commonwealth was favorable to the landowners and consequently could not have been prejudicial.

■ It is next contended the trial court improperly permitted witnesses for the Commonwealth to refer to comparable sales, one of which took place six years before the taking and the other 18 months after the taking (during the course of the trial). This property was somewhat unique and apparently it was difficult to find comparable sales of similar tracts. The objection of remoteness is primarily based upon the irrelevancy of the evidence in the light of changed conditions. We do not think either of these sales was so remote as to lack relevancy. They bracketed the actual time of taking and certainly had

some probative value with respect to fair appraisals.

Our recent experience with a great many condemnation cases has convinced us that both the expert witnesses and the jury need all the help they can get in determining the difficult and delicate question of fair values. Concrete considerations, such as comparable sales, are of obvious importance and we are not inclined to declare them too remote if they do have a relevant bearing on valuations in such cases. This is particularly true when the uniqueness of the property makes difficult the discovery of current comparable sales. It may also be observed that experts in the real estate field are in a much better position than this Court to determine if a sale is actually "comparable" (and therefore not irrelevant), and the opposing party can always attack such an expert opinion on cross-examination and rebuttal.

The next contention is that the Commonwealth's expert witness should not have been permitted to testify to the sale price of the allegedly comparable sale which took place during the trial because the witness' information was based upon hearsay. Unless the witness was either the buyer or the seller, or participated in the transaction, inevitably his knowledge of *the sale price* must be based on hearsay. We recognized this in Stewart v. Commonwealth, Ky., 337 S.W.2d 880. Here the witness was familiar with the property and had been advised of the sale price by another witness who had talked with the owner and had also gained the information from a newspaper story. Particularly in view of the fact that the landowners do not question the correctness of the stated sale price, we are of the opinion that the testimony concerning it was admissible.

It is finally contended that it was improper to permit the county tax commissioner to testify to the assessed value of the farm. It is the rule in this state that such assessed value is not competent if it has not been fixed or turned in by the landowner.

West Kentucky Coal Company v. Commonwealth, Ky., 368 S.W.2d 738. In view of the questionable soundness of this rule, which was first enunciated in Commonwealth v. Gilbert, Ky., 253 S.W.2d 264, 39 A.L.R.2d 205 (see Louisville & N. R. Co. v. Vandiver, 238 Ky. 846, 38 S.W.2d 965; 39 A.L.R.2d 220, 240), this Court may be inclined to reconsider it when all property is required to be assessed at 100 percent of its value in accordance with our opinion in Russman v. Luckett, Ky., 391 S.W.2d 694.

However that may be, in the present case an officer of a corporation, which as cotrustee held title to the property, did file with the county tax commissioner a statement under oath giving the fair value of the property for tax purposes. The landowners make three contentions which are easily answered.

It is first said that a cotrustee having legal title is not a "landowner". We are cited no principle or authority for such a proposition and do not believe it sound. In Fayette County Board of Supervisors v. O'Rear, Ky., 275 S.W.2d 577, we observed that under ordinary circumstances property should be listed by and assessed in the name of "the owner of the first freehold estate". It is apparent that it was one of the duties of the trustees with the legal title to pay the taxes against this property. The trustees for this purpose must be recognized as the "landowners".

It is next said that a corporate officer cannot fix an assessment value for his company because such officer is not the landowner. Appellants have apparently overlooked KRS 136.020(1). Even in the absence of this statute, it is obvious that a corporation must act through its officers and agents. The case of Allen Co. v. Thoroughbred Motor Court, Ky., 272 S.W.2d 343, cited by appellants on this point, relates to an entirely different question.

It is finally said that the acts of the trustees could not be binding upon the beneficiaries of the trust because there is

no "privity" between them. We can imagine no legal relationship where there is a closer privity. As a matter of fact, the purpose of the trust is to have the trustees act for the beneficiaries. Of course, no trust could exist if the trustees' authorized acts were not binding on those they represent.

We find no reversible error.

The judgment is affirmed.